IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAUL BLAINE SMITH, CAROLYN BASS SMITH, ET AL., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. _____ |
| INDEPENDENT BANK F/K/A BANK OF HOUSTON, TRUSTMARK NATIONAL BANK, THE TORONTO-DOMINION BANK, HSBC BANK PLC, SG PRIVATE BANKING (SUISSE) S.A., and BLAISE FRIEDLI, | § § § § § § § § | |
| *Defendants*. | § | |

## NOTICE OF REMOVAL

Defendant Trustmark National Bank ("Trustmark") hereby notifies this Court that it is removing the above-captioned civil action, currently pending in the 113th Judicial District Court of Harris County, Texas, to the United States District Court for the Southern District of Texas, Houston Division.  Trustmark invokes the Edge Act, 12 U.S.C. § 611 *et seq.*, and the Class Action Fairness Act, 28 U.S.C. § 1332(d), 1441, and 1453, as the bases for removal.

## PLEADINGS AND PROCEEDINGS

1. On November 1, 2019, Plaintiffs Paul Blaine Smith, *et al.* ("Plaintiffs")[1] filed a five-count petition ("Petition") in Harris County District Court against five banks—Trustmark, Independent Bank f/k/a Bank of Houston ("Independent"), The Toronto-Dominion Bank ("TD Bank"), HSBC Bank PLC ("HSBC"), and SG Private Banking (Suisse) S.A. ("SG Suisse") (collectively "Defendant Banks")—as well as one individual, Blaise Friedli ("Friedli"), SG

---

[1] A complete list of the 1,286 plaintiffs in this case can be found at Exhibit A to Plaintiffs' Original Petition.  That Petition, attached hereto as "Exhibit 1," is hereinafter cited as "Pet. ¶ __."

Suisse's Executive Vice President (together with Defendant Banks, "Defendants"). This Texas state court case is styled *Smith, et al. v. Independent Bank f/k/a Bank of Houston, et al.* Cause No. 2019-79814 ("*Smith*" or "State Court Action").

2.     Plaintiffs state that their claims and allegations in *Smith* are "identical to those asserted in the … operative … [c]omplaint" in *Rotstain, et al. v. Trustmark National Bank, et al.*, No. 3:09-cv-02984-N-BQ (N.D. Tex.) ("*Rotstain*"), a federal case pending in the Northern District of Texas.[2] *Smith* and *Rotstain* arise from claims related to an alleged Ponzi scheme perpetrated by R. Allen Stanford and Stanford International Bank, Ltd. ("SIBL"). On September 18, 2019 Plaintiffs were denied leave to intervene in *Rotstain* on grounds that they were adequately represented by a party to that suit, the Official Stanford Investors Committee ("OSIC"). *See Rotstain*, Doc. No. 562 at 4 ("Potential Intervenors are adequately represented by OSIC…."). Six weeks after that failed intervention, Plaintiffs filed their Petition in *Smith*.

3.     Believing *Smith* would "jeopardize OSIC's potential recovery [in *Rotstain* by] implicat[ing] [SIBL's] receivership assets," SIBL's court-appointed Receiver moved to stay *Smith* in a related suit, *Securities and Exchange Comm'n v. Stanford International Bank Ltd., et al.* No. 3:09-cv-00298-N (N.D. Tex.) ("*SEC*"),[3] which the district court granted on January 15, 2020, enjoining "the *state court* proceedings in Harris County District Court [in *Smith*]." *SEC*, Doc. No. 2950 at 3; *see also id* ("The Court refuses to allow Stanford investors to race for Receivership assets."). Notwithstanding this stay of "*state court* proceedings," the Defendants are, by this Notice, removing this case to *federal court*, which is permissible under federal law.

---

[2] *See* Pet. ¶ 13 ("The [Plaintiffs] allegations and claims are identical to those asserted in the *Rotstain* Action's operative Second Amended Class Action Complaint in all material respects. The only difference is that this Original Petition omits the *Rotstain* Action's class action allegations.").

[3] *See SEC*, Doc. No. 2938 (Nov. 26, 2019) at 1-2 ("Because the plaintiffs in [*Smith*] … are pursuing the *same* claims against the *same* Bank Defendants as the Receiver is pursuing through its assignee, [OSIC], in another matter pending before this Court [*i.e.*, *Rotstain*], the [*Smith*] [a]ction jeopardizes OSIC's potential recovery and implicates receivership assets. This Court should grant this motion and enjoin [*Smith*] to protect receivership assets.").

*See, e.g.*, *Value Recovery Group, Inc. v. Hourani*, 115 F. Supp. 2d 761, 766 (S.D. Tex. 2000) ("Although the Removing Defendants may have been precluded from taking action in the state trial court case, the state court's stay order did not bar defendants from removing the case to this court.").[4]

4.      This Notice of Removal is timely filed.  When removing under the Edge Act, a defendant is not bound by § 1446(b)'s thirty-day deadline but may instead remove at any time before trial.  *See* 12 U.S.C. § 632 ("[A]ny defendant in any such suit may, *at any time before the trial thereof*, remove such suit[] from a State court into the district court of the United States ….") (emphasis added); *Hill v. Citicorp*, 804 F. Supp. 514, 516 (S.D.N.Y. 1992) ("[§] 632 does not incorporate by reference the thirty-day time limit set forth in [§] 1446") (citing cases).[5]  In any case, none of the Defendants has yet been served, meaning this Notice of Removal would still be timely even if the 30-day period set forth in 28 U.S.C. § 1446(b) applied.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 346 (1999) ("if [a] complaint is filed in court prior to any service," then § 1446(b)'s 30-day removal deadline "runs from the service of the summons"); *see also* 14C Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC.

---

[4] *See also Justice v. Motorist Mut. Ins. Co.*, CIV 08-195-ART, 2008 WL 4844722, at *1 (E.D. Ky. Nov. 6, 2008) ("[T]he stay itself did not prohibit the Defendants from removing the case.  Indeed, a state court's stay order operates only to stay 'proceedings' in the state trial court action; it does not enjoin or prohibit the parties to the action from filing papers elsewhere." (internal quotations and alterations omitted)); *Weiss v. Del Webb Communities, Inc.*, No. 2:13-CV-000513-MMD, 2013 WL 3297099, at *4 (D. Nev. June 28, 2013) ("[T]hat the state trial court stayed the proceeding … is irrelevant to whether Defendants could have removed the action to this Court."); *Bond v. GMAC Mortgage, LLC*, 2011 WL 11650508, at *3 (C.D. Cal. June 13, 2011) (denying plaintiff's motion to remand a case back to state court on grounds that "removal was in violation of … [a] [s]tay [o]rder" and calling into question "whether removal would even count as 'litigation'").

[5] *See generally* 14C Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. ("Wright & Miller") § 3731 ("Federal statutes that concern specific types of substantive law actions may alter the 30-day time limit set forth in Section 1446(b)."). *Accord, e.g.*, *Sheinberg v. Princess Cruise Lines, Ltd.*, 269 F. Supp. 2d 1349, 1352 (S.D. Fla. 2003) ("[T]his Court concludes that given the plain language of 9 U.S.C. § 205 regarding removal at any time before trial, the thirty day time limit does not apply to removal under the Convention.").

("Wright & Miller") § 3731 (3d ed.) ("[I]f the complaint is filed in court prior to any service, the 30-day removal period is triggered by the service of the summons.").[6]

5.      Because no Defendant in this case has been served with a Summons and the Petition, no other Defendant's consent to removal is required.  *See Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1263 (5th Cir. 1988) (only *served* defendants must join in the petition); *Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004, 1007 (5th Cir. 1992) (failure of a defendant to join in removal petition was no bar to the district court's removal jurisdiction where that defendant had not been served).[7]   In addition, unanimity of consent among defendants is unnecessary where, as here, a Defendant removes a case under the Edge Act. *See* 12 U.S.C. §632 ("*any defendant* … may … remove such suits from a State court into the district court of the United States" (emphasis added)); *Wenzoski v. Citicorp*, 480 F. Supp. 1056, 1058 (N.D. Cal. 1979) ("[A]lthough unanimity among defendants is ordinarily required when removal is pursuant to 28 U.S.C. § 1441(a), since removal in this case was pursuant to 12 U.S.C. § 632 unanimous joinder in the removal petition was not necessary."); *see also* Wright & Miller § 3730 & n.26 (including § 632 among the various "special removal statutes that do not require all defendants to

---

[6] A defendant may remove a case under § 1446(b) prior to being served. *See Delgado v. Shell Oil Co.*, 231 F.3d 165, 177 (5th Cir. 2000) ("Generally, service of process is not an absolute prerequisite to removal …. [W]e read  [28 U.S.C.] § 1446(b) … as consciously reflecting a desire on the part of Congress to require that an action be commenced against a defendant before removal, but not that the defendant have been served."); *Perez v. Bank of Am., N.A.*, EP-13-CV-285-KC, 2013 WL 5970405, at *3 (W.D. Tex. Nov. 7, 2013) ("[A] defendant may remove a case even before the plaintiff has properly served that defendant—that is, before 28 U.S.C. § 1446(b)'s thirty-day clock begins to run.") (citing *Delgado*, 231 F.3d at 177); *Perez v. ZTE (USA), Inc.*, 3:18-CV-2948-B, 2019 WL 1429654, at *2 (N.D. Tex. Mar. 29, 2019) ("[A] defendant may remove once the petition is filed."); *see also, e.g.*, *Novak v. Bank of New York Mellon Tr. Co., NA.*, 783 F.3d 910, 914 (1st Cir. 2015) ("As far as we can tell, every one [of the federal courts to have considered the issue] has concluded that formal service is not generally required before a defendant may file a notice of removal."); *La Russo v. St. George's Univ. Sch. of Med.*, 747 F.3d 90, 97 (2d Cir. 2014) ("Service of process upon a removing defendant is not a prerequisite to removal.") (citing *Delgado*, 231 F.3d at 177).

[7] *See also, e.g.*, *Ramirez v. Lowe's Home Centers LLC*, 2:15-CV-202, 2015 WL 4488659, at *2 (S.D. Tex. July 22, 2015) ("Consent to removal is not required from … defendants who have not been served by the time of the removal."); *Gutierrez v. La Joya Indep. Sch. Dist.*, CIV.A. M-12-266, 2012 WL 5464957, at *2 (S.D. Tex. Nov. 8, 2012) ("lack of removal-consent by an unserved defendant [i]s not a bar to federal jurisdiction"); Wright & Miller §3730 ("[D]efendants who have not been properly served may be ignored … for the purpose of requiring their joinder in the notice of removal.").

join the notice of removal").[8]   Unanimity of consent is likewise unnecessary where, as here, a

Defendant removes under the Class Action Fairness Act.   *See* 28 U.S.C. §   1332(d)(11)(A)

("[f]or purposes of … [§] 1453, a mass action shall be deemed to be a class action"); 28 U.S.C. §

1453(b) (class actions "may be removed by any defendant without the consent of all

defendants"); *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006)

("Section 1453(b) … overrides the … requirement that each defendant consent to removal.").

Nevertheless, Trustmark has conferred with the other Defendants, and the other Defendants do

not object to removal.

6.      In compliance with 28 U.S.C. § 1446(a) and Local Rule 81, a copy of all process,

pleadings, and orders served or issued in the State Court Action, along with the docket sheet, an

index of matters being filed, and a list of counsel, including addresses, telephone numbers and

parties represented, are attached hereto.  *See* Exhibits 1-4.

## **NATURE OF ACTION**

7.      Plaintiffs' Petition purports to state claims by persons allegedly defrauded by

Antiguan-based SIBL, part of the Stanford Financial Group controlled by R. Allen Stanford

(collectively, "Stanford"), against correspondent banks that collected and transferred funds for

SIBL.   According to the Petition, Stanford perpetrated "a giant Ponzi scheme" by which it

"secretly used SIBL CD investor funds for vice, vanity, and speculative personal business

ventures cooked up by R. A[llen] Stanford."  Pet. ¶ 3.  Plaintiffs have not named SIBL, Stanford

Financial Group, R. Allen Stanford, or any other Stanford entity as a defendant in this action;

rather, Plaintiffs have filed suit against five of the banks (along with the Executive Vice

President of one of those banks) with which SIBL may have maintained accounts.

---

[8] *See also CI Intern. Fuels, Ltda. v. Helm Bank, S.A.*, 707 F. Supp. 2d 1351, 1354 (S.D. Fla. 2010) ("the rule of unanimity does not apply to 12 U.S.C. § 632") (citing cases).

8.     Count One purports to state a common-law claim for "aid[ing], abett[ing], and/or particpat[ing] with R. A[llen] Stanford and his co-conspirators in a fraudulent scheme against the [Plaintiffs] involving the issuance of SIBL's investment products."   Pet. ¶ 429; *see also id.* ¶ 430.

9.     Count Two alleges that the "Bank Defendants are liable as an 'aider' [*sic*] under [the Texas Securities Act], TEX. REV. CIV. STAT. art. 581-33F(2)."   Pet. ¶ 435; *see also id.* ¶¶ 431-38.

10.     Count Three purports to state a claim for "knowingly aid[ing], abett[ing], or participat[ing] in the Stanford Entities' breach of fiduciary duty to the [Plaintiffs]."   Pet. ¶ 442; *see also id.* ¶¶ 439-41.

11.     Count Four purports to state a claim for "knowingly or recklessly aid[ing], abett[ing], or participat[ing] in misappropriation and conversion of property from the [Plaintiffs]."   Pet. ¶ 444; *see also id.* at ¶ 443.

12.     Count Five purports to state a claim for civil conspiracy by virtue of "overt acts taken … to further the objectives of the Stanford Fraud."   Pet. ¶ 448; *see also id.* ¶¶ 445-47.

13.     Plaintiffs allege losses "exceeding $650 million," Pet. ¶ 17 (emphasis omitted), and thus seek (1) "damages in an amount to be determined at trial and in accordance with the claim determinations of the U.S. Receiver"; (2) punitive damages; and (3) an award of attorneys' fees and costs.  Pet. at pp. 122-23 ("Prayer for Relief").

## <u>VENUE</u>

14.     The Southern District of Texas, Houston Division, embraces Harris County, the place where the State Court Action is pending.  Consequently, for purposes of this Notice of Removal, venue is proper in this district and division under 28 U.S.C. § 1441(a).

6

## JURISDICTION

15.     This case is removable both under the Edge Act and under the Class Action Fairness Act ("CAFA").

### A.     JURISDICTION UNDER THE EDGE ACT

16.     The Court has federal question jurisdiction under the Edge Act. That Act states in pertinent part:

> Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking . . . or out of other international or foreign financial operations . . . shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits[.]

12 U.S.C. § 632.   Thus, the jurisdictional requirements under the Edge Act are: "(1) a corporation organized under the laws of the United States must be a party to the action and (2) the action must arise out of transactions involving international or foreign banking or other international or foreign financial operations." *Highland Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc.*, 627 F. Supp. 2d 730, 732 (N.D. Tex. 2008) (citing *Bank of America Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 213 (S.D.N.Y. 2005)).[9]

17.     According to Plaintiffs' Petition, Trustmark "is a national bank association chartered by the Office of the Comptroller of the Currency pursuant to the applicable laws of the United States of America and the related rules promulgated by the Office of the Comptroller of the Currency." Pet. ¶ 18.  Therefore, this case includes a corporation organized under the laws of the United States as a party, thereby satisfying the first requirement for Edge Act jurisdiction.

---

[9] *See generally* Wright & Miller § 3961 & n.19 (listing § 632 among the "special statutory provisions" by which "Congress has given the district courts jurisdiction").

18.     In determining whether the second jurisdictional requirement under the Edge Act is satisfied, the Court must consider "whether the lawsuit arises out of transactions that are (a) foreign and (b) either banking transactions or financial operations."  *Highland Crusader*, 627 F. Supp. 2d at 732 (citing *Pinto v. Bank One Corp.*, 2003 WL 21297300, at * 3 (S.D.N.Y. 2003)). "A suit satisfies the jurisdictional requisites of [§] 632 if any part of it arises out of transactions involving international or foreign banking."  *In re Lloyd's American Trust Fund Litigation*, 928 F. Supp. 333, 338 (S.D.N.Y. 1996).  In particular, "[§] 632 confers jurisdiction on the district courts over suits arising out of national banks engaging in banking activities with foreign companies."  *First National Bank of Joliet v. Promatek Medical Systems*, Inc., 870 F. Supp. 234, 237 (N.D. Ill. 1994).

19.     Because Plaintiffs' claims arise out of the Defendant Banks' collection of SIBL deposits into bank accounts at the Defendant Banks, and the transfers of funds out of those bank accounts, which are traditional banking activities, Plaintiffs' claims arise out of "banking" transactions.  *See, e.g.*, Pet. ¶ 429 ("[T]he Bank Defendants provided banking services … that allowed Stanford and his co-conspirators to misappropriate billions of dollars of investor funds."); *id.* ¶ 168 ("R. A[llen] Stanford and the Stanford Entities were engaged in a multi-year, international Ponzi scheme, working with Bank Defendants to effect banking transactions that were undertaken with the purpose and intent of defrauding the SIBL [] investors.").  Even if Plaintiffs' claims did not arise out of "banking" transactions (and, as Plaintiffs' Petition shows, they do), the claims unquestionably arise out of "financial operations."

20.     Moreover, as Plaintiffs' Petition makes clear, the banking and financial operations at issue were foreign or international in character.  The Plaintiffs themselves consist of hundreds of individuals from an array of foreign countries.  *See* Pet., Ex. A (listing, as plaintiffs, persons

and entities from Mexico, New Zealand, Argentina, Venezuela, Colombia, Italy, Spain, France, the Dominican Republic, Canada, and other countries). Plaintiffs have named as Defendants several foreign banks and a foreign individual. *See* Pet. ¶¶ 20-23. Plaintiffs have listed as "relevant non-parties" various international entities. *See* Pet. ¶¶ 24-31. And Plaintiffs devote over a dozen pages of their Petition to discussing Swiss banking standards, U.K. banking standards, Canadian banking standards, U.S. banking standards, and "worldwide banking industry standards." *See* Pet. ¶¶ 44-91.

21.     In addition, Plaintiffs make the following allegations:

- "R. A[llen] Stanford and the Stanford Entities were engaged in a multi-year, *international* Ponzi scheme, working with Bank Defendants to effect banking transactions that were undertaken with the purpose and intent of defrauding the SIBL [] investors." Pet. ¶ 168 (emphasis added).

- "The Bank Defendants … provided critical correspondent banking, private banking, investment banking and other financial services across dozens of accounts, assisting the Stanford Fraud in flourishing *worldwide*." Pet. ¶ 243 (emphasis added).

- "The Bank Defendants provided banking services *across four countries in a global arrangement* that, upon scrutiny, made little sense." Pet. ¶ 229 (emphasis added).

- "[A]lthough SIBL was *located in Antigua*, it but a cog in the *vast Stanford machinery*, which was organized and operated in *Houston*." Pet. ¶ 36 (emphasis added).

- "R. A[llen] Stanford's top lieutenant, James M. Davis[,] pleaded guilty to criminal charges and admitted to perpetrating a *worldwide* multi-billion-dollar fraudulent scheme and securities fraud …." Pet. ¶ 13 (emphasis added).

- "The checks for SIBL CD purchases drawn on checking accounts were bundled up and *sent to Antigua* and then *returned* to Trustmark *in the U.S.* in pouches in a daily basis … even though many of the checks *originated in the U.S.*" Pet. ¶ 231 (emphasis added).

- [A]t the direction of R. A[llen] Stanford and Jim Davis, Friedli regularly transferred large sums of money … to three separate accounts in the name of SIBL's purported auditor … – one at Barclay's Bank PLC, *London* … another at First Bank *Puerto Rico*, and to another at First Bank *Virgin Islands*." Pet. ¶ 327 (emphasis added).

- "Trustmark presided over … unusual check 'pouching' activity, wherein investors' checks to purchase SIBL CDs were bundled by the dozen on a daily basis and mailed in pouches *from Houston to Antigua and back to Houston*." Pet. ¶ 6 (emphasis added).

- "Through a _worldwide_ network of affiliates controlled from and directed by its Houston, Texas headquarters, the Stanford Entities sold CDs issued by SIBL …. These entities included SGC and SFIS in the _United States_, Stanford Bolsa & Banca S.A. in _Mexico_, Comisionista De Bolsa in _Columbia_ [_sic_], and others."  Pet. ¶ 132 (emphasis added).

- "Depositors received wiring instructions that indicated that transfers denominated in _British Pounds_ or _Euros_ were to be sent to an account at HSBC, and transfers denominated in _U.S._ or _Canadian_ Dollars were to be sent to an account in the name of SIBL at TD Bank."  Pet. ¶ 135 (emphasis added).

- "SIBL, an _Antigua_ entity, could not clear transactions in _U.S. Dollars, Pounds Sterling, Euros, or Swiss Francs_," so it enlisted the help of Banking Defendants.  Pet. ¶ 173 (emphasis added).

- "TD Bank was the primary conduit for the introduction of _U.S._ and _Canadian dollars_ to the Stanford Fraud …."  Pet. ¶ 349 (emphasis added).

- "When SIBL eventually obtained a handful of _Canadian_ investors, TD Bank also provided such series of _Canadian dollar wire transfers_."  Pet. ¶ 379 (emphasis added).

- "Wires for purchases of SIBL CDs in dollars went to TD Bank, a _Canadian_ bank, even though the Stanford Empire was headquartered in _Houston_ and had accounts with _U.S._ banks."  Pet. ¶ 230 (emphasis added).

- "SIBL was located in _Antigua_ … [and] Guardian bank had been run out of _Montserrat_."  Pet. ¶ 282 (emphasis added); _see also id._ at ¶ 309 (same); _id._ at ¶ 390 (same); _id._ at ¶ 421 (same).

- "[H]undreds of millions of dollars of SIBL CD deposits were funneled to two money-losing _Caribbean_ airlines … [and] a separate _Venezuelan_ bank …."  Pet. ¶ 3 (emphasis added).

- Stanford directed the Executive Vice President of SG Suisse in _Geneva, Switzerland_ to make certain payments.  Pet. ¶¶ 312-13.

- "Friedli's consulting agreement called on him to … [a]dvise and support to Company … in respect to their relations with local governments and regulators _in those countries in Europe_ where they do business …."  Pet. ¶ 316 (emphasis added).

- "[R. Allen Stanford] used some of these funds to purchase in his personal capacity 100% of the assets of Bank Galicia—a _Venezuelan_ bank—and the balance was transferred to R. A[llen] Stanford's private bank accounts in _Houston_ and _Miami_."  Pet. ¶ 345 (emphasis added).

- "TD Bank also provided a credit facility to R. A[llen] Stanford's _Caribbean_ Star Airlines, and SIBL secured that line of credit through one of its _U.S. Dollar_ accounts at TD Bank."  Pet. ¶ 358 (emphasis added).

- "Over the subsequent years, TD Bank personnel took over a dozen trips to meet with SIBL and/or SFG personnel in _Antigua_ or _Houston_, and also met on various other occasions in _numerous locations around the world_."  Pet. ¶ 371 (emphasis added);

- "TD's bank relationship manager for _Latin America and the Caribbean_, visited Houston in January 2004."  Pet. ¶ 372 (emphasis added).

- "Stanford insisted upon maintaining their account with the HSBC affiliate in _London_ …."  Pet. ¶ 418 (emphasis added);

- "HSBC knew that there was no legitimate business or economic purpose for SIBL's need for correspondent banking services in the _U.K._"  Pet. ¶ 420 (emphasis added).

22.     In this case, the nexus to transactions involving international or foreign banking could hardly be stronger.  Because Defendant Trustmark is a U.S. national bank, and Plaintiffs' claims arise out of foreign or international banking and financial operations, removal is proper under the Edge Act, 12 U.S.C. § 632.

**B.     JURISDICTION UNDER CAFA**

23.     This Court also has diversity jurisdiction under CAFA.  _See_ 28 U.S.C. §§ 1332(d), 1441, and 1453.  "To qualify for removal as a mass action under CAFA, a civil action must: (1) consist of 'monetary relief claims of 100 or more persons [that] are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact;' (2) satisfy CAFA's minimal diversity requirement; (3) have an aggregated amount in controversy exceeding $5,000,000; and (4) have at least one plaintiff's claims exceeding $75,000." _Boulanger v. Devlar Energy Mktg., LLC_, 3:15-CV-3032-B, 2015 WL 7076475, at *6 (N.D. Tex. Nov. 13, 2015) (quoting 28 U.S.C. § 1332(d)(11)(A)–(B)(i)); _see also Greco v. Jones_, 992 F. Supp. 2d 693, 695 (N.D. Tex. 2014); _Hood ex rel. Mississippi v. JP Morgan Chase & Co._, 737 F.3d 78, 85-86 (5th Cir. 2013).  Each of these requirements is met here.

**1.     Over 100 Plaintiffs Advance Claims Involving Common Questions of Law or Fact.**

24.     As their Petition states, "[Plaintiffs] number more than 1,200 [alleged] victims" who bring "claims against … Defendants … exceeding $650 million."  _See_ Pet. ¶ 17 (emphasis

omitted); *see also* Pet., Exhibit A (listing 1,286 Plaintiffs).  This far exceeds the 100-plaintiff threshold required of a removable "mass action" under CAFA.  *See* 28 U.S.C. § 1332(d)(11)(B)(i).  Further, all 1,286 Plaintiffs advance the same five causes of action against all six Defendants, thereby implicating "common questions of law."  *See* Pet. ¶¶ 424-49 (noting that each cause of action is brought against "All … Defendants").  And the acts each Defendant is alleged to have committed are likewise alleged to have damaged all 1,286 Plaintiffs *collectively*, thereby implicating "common questions of … fact."  *See, e.g.*, Pet. ¶ 443 ("Stanford and his co-conspirators misappropriated billions of dollars that the Stanford Investors *collectively* entrusted to SIBL." (emphasis added)); *see also* 28 U.S.C. § 1332(d)(11)(B)(i) (removable "mass actions" require "claims involv[ing] common questions of law or fact").  In fact, Plaintiffs' Petition does not differentiate among the individual Plaintiffs at all, but rather consistently refers to them *en mass* as the "Stanford Investors."  *See, e.g.*, Pet. ¶ 429 ("Defendants aided, abetted, and/or participated … in a fraudulent scheme against the *Stanford Investors* …." (emphasis added)); Pet. ¶ 442 ("[T]he Bank Defendants knowingly aided, abetted, or participated in the … breach of fiduciary duty to the *Stanford Investors*." (emphasis added)).

## 2. Minimal Diversity.

25.     "Minimal diversity" is generally understood to mean "the existence of at least *one* party who is diverse in citizenship from one party on the other side of the case."  *Grupo Dataflux v. Atlas Glob. Group, L.P.*, 541 U.S. 567, 578 n.6 (2004) (emphasis in original).  CAFA specifies that minimal diversity exists where "(A) any member of a class of plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member

of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state."  28 U.S.C. § 1332 (d)(2).

26.     "In determining diversity jurisdiction, the state where someone establishes his domicile serves a dual function as his state of citizenship." *Preston v. Tenet Healthsystem Memorial Medical Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007). A "citizen or subject of a foreign state" refers "to those alien or foreigners who are citizens or subjects of some specific foreign state." *Blair Holdings Corp. v. Rubinstein*, 133 F. Supp. 496, 500 (S.D.N.Y. 1955); *see also* Wright & Miller § 3604 & n.80.  "For purposes of diversity jurisdiction, only the American nationality of a dual national is recognized." *Coury v. Prot*, 85 F.3d 244, 247 (5th Cir. 1996).

27.     "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  "A corporation incorporated in a foreign country is a citizen of that country for purposes of diversity jurisdiction." *Panalpina Welttransport GmBh v. Geosource, Inc.*, 764 F.2d 352, 354 (5th Cir. 1985).

28.     As reflected in their Petition, Plaintiffs Paul Blaine Smith and Caroline Bass Smith are citizens of the United States residing in Baton Rouge, Louisiana.  *See* Pet., Ex. A. Other Plaintiffs hail from an array of foreign countries including Mexico (*e.g.*, Victor Aguilar-Mena), New Zealand (*e.g.*, Belron Investment), Argentina (e.g., Fiamma Baldassarini), Venezuela (*e.g.*, Jose Manuel Isaacs), Colombia (*e.g.*, Pedro Allina), Italy (*e.g.*, Giuseppe Campagnolo Zanchetta), Spain (*e.g.*, Pablo Cuerda Sobrino Trust), France (*e.g.*, Tortora Trust), the Dominican Republic (*e.g.*, Gengibre Trust), and Canada (*e.g.*, Arcelia Ocana).  *See* Pet., Ex. A.

29.     Further, as pleaded by Plaintiffs: Defendant TD Bank is a banking corporation incorporated in Canada, *see* Pet. ¶ 20;   Defendant HSBC is an international bank with its registered office and principal place of business in London, England, *see* Pet. ¶ 21;   Defendant SG Suisse is a banking corporation organized under Swiss law with its principle place of business in Switzerland, *see* Pet. ¶ 22; Defendant Trustmark is a national banking association organized under U.S. law with its principal place of business in Mississippi, *see* Pet. ¶ 18; Defendant Independent is a banking institution with its principal place of business in Texas, *see* Pet. ¶ 19; and Defendant Friedli is a citizen and resident of Switzerland, *see* Pet. ¶ 23.

30.     Accordingly, on the facts alleged in Plaintiffs' Petition, the requisite minimal diversity of citizenship exists between Plaintiffs and Defendants under 28 U.S.C. § 1332(d)(2)(A), (B), and (C).[10]   Such diversity existed at the time Plaintiffs' Petition was filed and through the date of this removal.

**3.     Aggregate Amount in Controversy.**

31.     Under CAFA, a minimally diverse mass action is removable if the amount in controversy is greater than $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2).   The claims of the individual members "shall be aggregated" to determine whether the jurisdictional minimum has been met. 28 U.S.C. § 1332(d)(6); *see also Hood*, 737 F.3d at 85 (removable mass action "must … have an aggregate amount in controversy of at least $5,000,000").

---

[10] For example, because Plaintiffs Paul Blaine Smith and Caroline Bass Smith are citizens of a State (Louisiana) that is different from Defendants Trustmark (Mississippi) and Independent (Texas), minimal diversity exists under § 1332(d)(2)(A).  Likewise, because Plaintiffs Aguilar-Mena (Mexico), Fiamma Baldassarini (Argentina), and Pedro Allina (Colombia) are citizens of foreign states, and Defendants Trustmark (Mississippi) and Independent (Texas) are citizens of States, minimal diversity exists under § 1332(d)(2)(B).  And because Plaintiffs Paul Blaine Smith and Caroline Bass Smith are citizens of a State (Louisiana) and Defendants TD Bank (Canada), HSBC (England), and SG Suisse (Switzerland) are citizens of foreign states, minimal diversity is present under § 1332(d)(2)(C).

32.     "[U]nless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *see also Garcia v. Koch Oil Co. of Texas Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).

33.     While Defendants deny that Plaintiffs are entitled to any recovery, Plaintiffs allege that their aggregate damages "exceed[] $650 million."   Pet. ¶ 17 (emphasis omitted). Thus from the face of Plaintiffs' Petition, the aggregate-amount-in-controversy requirement is met.

**4.     Individual Amount in Controversy.**

34.     Finally, for a mass action to be removable under CAFA, "at least one plaintiff's claim [must] satisf[y] the $75,000 individual amount in controversy." *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 239 (5th Cir. 2015) (citing 28 U.S.C. § 1332(d)(11)(B)(i) and *Hood*, 737 F.3d at 86).[11]   Here, while the Petition declines to specify what each of the 1,286 individual Plaintiffs respectively claims in damages, it is a mathematical certainty that at least one Plaintiff claims damages in excess of $75,000.   Taking the total amount that Plaintiffs allege in damages—a number "exceeding $650 million," *see* Pet. ¶ 17 (emphasis omitted)—and dividing it by the number of Plaintiffs (1,286), yields an average claim in the amount of $505,443.23.   Put another way, if all but one Plaintiff alleged $74,999 in damages[12]—a dollar shy of the individual-amount-in-controversy threshold—the remaining Plaintiff would (based on Plaintiffs' $650

---

[11] *See also Boulanger*, 2015 WL 7076475, at *3 ("at least one plaintiff's claim[] must exceed $75,000"); *Greco*, 992 F. Supp. 2d at 698 ("Defendants must … prove the jurisdictional threshold requirement that at least one Plaintiff's claim[] exceed[s] $75,000."); *Hamilton v. Burlington N. Santa Fe Ry. Co.*, A-08-CA-129-SS, 2008 WL 8148619, at *2 (W.D. Tex. Aug. 8, 2008) ("At least one individual plaintiff must also seek recovery exceeding $ 75,000." (citing *Abrego*, 443 F.3d at 689)).

[12] 1,285 x $74,999 = $96,373,715

million aggregate claim) be left claiming $553,626,285 in damages,[13] a figure that well exceeds the $75,000 threshold.  Thus, the individual-amount-in-controversy requirement is met.

*

35.      Because Plaintiffs suit qualifies as a "mass action" under CAFA, it is removable under 28 U.S.C. §§ 1332(d), 1441, and 1453.

## JURY DEMAND

36.      Plaintiffs have demanded a jury trial.  *See* Pet. ¶ 449.

## CONCLUSION

WHEREFORE, Defendant Trustmark National Bank prays that the above action currently pending in the 113th Judicial District Court of Harris County, Texas, be removed to the United States District Court for the Southern District of Texas, Houston Division, and that this District Court assume jurisdiction of this action and enter such other and further orders as may be necessary to accomplish the requested removal and promote the ends of justice.

---

[13] $650,000,000 - $96,373,715 = $553,626,285

Respectfully submitted,

**TRUSTMARK NATIONAL BANK**

By:    */s/ Robin C. Gibbs*
       Robin C. Gibbs
       Attorney-in-Charge
       State Bar No. 07853000
       S.D. Tex. Bar No. 4790
       GIBBS & BRUNS LLP
       1100 Louisiana, Suite 5300
       Houston, Texas 77002
       Telephone: (713) 650-8805
       Facsimile: (713) 750-0903
       E-mail: rgibbs@gibbsbruns.com

OF COUNSEL:

Scott Humphries
Jeffrey C. Kubin
Ashley McKeand
Colin C. Pogge
GIBBS & BRUNS LLP
1100 Louisiana, Suite 5300
Houston, Texas 77002

*Counsel for Defendant Trustmark National Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of February, 2020, a true and correct copy of the foregoing Notice of Removal was served electronically upon the following:

CASTILLO SNYDER, P.C.
Edward C. Snyder
esnyder@casnlaw.com
One Riverwalk Place
700 N. St. Mary's, Suite 1560
San Antonio, Texas 78205
Telephone: (210) 630-4200
Facsimile: (210) 630-4210

FISHMAN HAYGOOD, L.L.P.
Benjamin D. Reichard
breichard@fishmanhaygood.com
State Bar Number 24098693
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5274
Facsimile: (504) 586-5250

***Counsel for Plaintiffs Paul Blaine Smith, et al.***

JACKSON WALKER LLP
Paul C. Watler, Lead Attorney
pwatler@jw.com
Jonathan D. Neerman
jneerman@jw.com
Edwin Buffmire
ebuffmire@jw.com
Lindsey Marsh
lbrown@jw.com
Minoo Blaesche
mblaesche@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

***Counsel for Defendant Independent Bank F/K/A Bank of Houston***

NORTON ROSE FULBRIGHT US LLP
Rodney Acker, Lead Attorney
rodney.acker@nortonfulbright.com
Ellen Sessions
ellen.sessions@nortonrosefulbright.com
James V. Leito IV
james.leito@nortonrosefulbright.com
2200 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

SIMPSON THACHER & BARTLETT LLP
Courtney A. Welshimer (*Pro Hac Vice*)
courtney.welshimer@stblaw.com
Lynn K. Neuner (*Pro Hac Vice*)
lneuner@stblaw.com
Peter E. Kazanoff (*Pro Hac Vice*)
pkazanoff@stblaw.com
Meredith Karp (*Pro Hac Vice*)
meredith.karp@stblaw.com
Kavitha Sivashanker (*Pro Hac Vice*)
kavitha.sivashanker@stblaw.com
Eamonn Campbell (*Pro Hac Vice*)
eamonn.campbell@stblaw.com
Raquel E. Villagra (*Pro Hac Vice*)
raquel.villagra@stblaw.com
Stephen J. DiGregoria (*Pro Hac Vice*)
stephen.digregoria@stblaw.com
Melissa Vallejo (*Pro Hac Vice*)
melissa.vallejo@stblaw.com
Thomas M. Cramer (*Pro Hac Vice*)
thomas.cramer@stblaw.com
Joshua Polster (*Pro Hac Vice*)
Joshua.Polster@stblaw.com
William Russell, Jr. (*Pro Hac Vice*)
wrussell@stblaw.com
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

**Counsel for Defendant The Toronto-Dominion Bank**

LOCKE LORD LLP
Roger B. Cowie, Lead Attorney
rcowie@lockelord.com
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 740-8000
Facsimile: (214) 740-8800

LOCKE LORD LLP
John K. Schwartz
jschwartz@lockelord.com
Taylor Brinkman
tbrinkman@lockelord.com
600 Congress Avenue, Suite 2200
Austin, Texas 778701
Telephone: (512) 305-4806
Facsimile: (512) 305-4800

**Counsel for Defendant HSBC Bank PLC**

SKADDEN ARPS SLATE MEAGHER & FLOM LLP
Noelle M Reed, Lead Attorney
noelle.reed@skadden.com
Wallis Mizell Hampton
wallis.hampton@skadden.com
1000 Louisiana Street, Suite 6800
Houston, TX 77002-5026
Telephone: (713) 655-5122
Fax: (713) 483-9122

Allen Lanstra  (*Pro Hac Vice*)
allen.lanstra@skadden.com
Julia Nahigian (*Pro Hac Vice*)
Julia.Nahigian@skadden.com
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
300 South Grand Avenue
Suite 3400
Los Angeles, CA 90071
Telephone: 213-687-5513
Fax: 213-621-5513

George A Zimmerman (Pro Hac Vice)
george.zimmerman@skadden.com
Julie Elizabeth Cohen (Pro Hac Vice)
julie.cohen@skadden.com
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Telephone: 212-735-2047
Fax: 917/777-2047

Michelle L Davis
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
2521 Springer Road
Midlothian, TX 76065
Telephone: 713-655-5197
Fax: 713-483-9197
michelle.davis@skadden.com

***Counsel for SG Private Banking (Suisse) S.A.***

MORGAN LEWIS & BOCKIUS LLP
Brian A Herman, Lead Attorney
brian.herman@morganlewis.com
101 Park Avenue
New York, NY 10178
Telephone: 212-309-6909
Fax: 212-609-6001

ARCADI JACKSON LLP
Aaron C Christian
aaron.christian@arcadijackson.com
2911 Turtle Creek Blvd
Suite 800
Dallas, TX 75219
Telephone: 214-865-6562

MORGAN LEWIS & BOCKIUS LLP
Jillian R Harris
jillian.harris@morganlewis.com
1717 Main Street
Suite 3200
Dallas, TX 75201
Telephone: 214-466-4194
Fax: 214-466-4000

ORRICK HERRINGTON & SUTCLIFFE LLP
Ryan C Wooten
rwooten@orrick.com
1301 McKinney Street
Suite 4100
Houston, TX 77010-3096
Telephone: 713-658-6617
Fax: 713-658-6401

MORGAN LEWIS & BOCKIUS LLP
Stephanie Gamiz (Pro Hac Vice)
sgamiz@morganlewis.com
101 Park Avenue
New York, NY 10178
Telephone: 212-309-6000
Fax: 212-309-6001

***Counsel for Blaine Friedli***

*/s/ Robin C. Gibbs*
Robin C. Gibbs